UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGARDO MICHEL AND ALIS SALINAS DE MICHEL,<br><br>      Plaintiffs,<br><br>      v.<br><br>DEUTSCHE BANK TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-2; SAXON MORTGAGE SERVICES, INC.,; REGIONAL SERVICE CORPORATION; ARGENT MORTGAGE COMPANY; AND DOES 1 to 50 iNCLUSIVE,<br><br>      Defendants. | CASE NO. 1:10-CV-2375 AWI SKO<br><br>ORDER RE: MOTION TO DISMISS |

## I. History[1]

Plaintiffs Edgardo Michel and Alis Salinas de Michel ("Plaintiffs") purchased 5025 Countryridge Lane, Salida, CA on August 24, 2005. Plaintiffs financed the purchase with two loans from Defendant Argent Mortgage Company ("Argent") in the amounts of $360,000 and $90,000. In procuring financing, Plaintiffs had responded to an advertisement from third party Mi Tierra Mortgage and Real Estate Inc. ("Tierra"). Plaintiffs' primary language is Spanish;

---

[1] The factual history is provided for background; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

1

1  their English is extremely limited.  Plaintiffs worked with a Tierra employee, Ruby Haro, and all
2  communications with Ms. Haro and Tierra were in Spanish.  On Plaintiffs' behalf, Ms. Haro
3  applied for the loans with Argent.  Plaintiffs signed the loan documents on August 7, 2005 at
4  Tierra's office.  Ms. Haro was expected to be present but did not show up.  Due to typographical
5  errors, the loan documents had to be signed again on August 14, 2005.  Plaintiffs allege they
6  were not provided disclosures required by the Truth In Lending Act ("TILA").
7      Plaintiffs allege Ms. Haro was acting as an agent for Argent.  Plaintiffs do not explain
8  what relationship Tierra has with Argent.  The larger mortgage was a thirty year adjustable rate
9  mortgage with an initial period of three years during which the monthly payments only covered
10 interest.  Ms. Haro told Plaintiffs that the monthly payments would be $1,500 including taxes and
11 insurance.  The actual mortgage payments in the initial three year period were $2,890.15.
12 Plaintiffs allege Tierra falsely represented Plaintiffs' monthly income as $9,752.02 on the loan
13 application though the actual amount was $4,516.00.  Plaintiffs allege Argent provided Tierra
14 with information about what should be put on the loan application form in order to obtain loans
15 of the specified amounts, knowing that Tierra would falsify loan applications to meet the
16 requirements.
17     The loan servicer was Defendant Saxon Mortgage Services, Inc. ("Saxon").  In May
18 2007, Plaintiffs refinanced the smaller loan with third party Bank of America.  The subject of this
19 suit is the larger loan.  The original deed of trust on the larger loan specified Plaintiffs as the
20 "borrower"; Argent as the "lender" and "beneficiary"; and third party Town and Country Title
21 Services, Inc. ("TAC") as "trustee."  The deed of trust was signed before a notary public on
22 August 12, 2005 and recorded on August 24, 2005.  Doc. 1, Ex. A, at 28-42.  Argent executed an
23 assignment of the deed of trust in favor of Defendant Deutsche Bank Trust Company as Trustee
24 for GSAA Home Equity Trust 2006-2 ("Deutsche").  The notary public affirmed that Argent's
25 agent signed the document on August 26, 2005 though the document is dated August 23, 2005;
26 the assignment was not recorded until June 15, 2007.  Doc. 1, Ex. B, at 45-46.  Plaintiffs point out
27 that the GSAA Home Equity Trust 2006-2 was not created until January 6, 2006.  Doc. 1,
28 Complaint, at 8:9-10.  On January 23, 2009, a Deutsche representative signed an assignment of

the deed of trust in favor of Saxon; the assignment was recorded on January 28, 2009. Doc. 3, Part 2, Ex. B, at 24.  On January 9, 2009, a Saxon representative signed a substitution of trustee, removing TAC in favor of Defendant Regional Service Corporation ("RSC"); the substitution of trustee was recorded on March 24, 2009. Doc. 1, Ex. C, at 48.  On June 3, 2010, a Saxon representative signed an assignment of the deed of trust in favor of Deutsche, the assignment was recorded on September 7, 2010. Doc. 3, Part 2, Ex. E, at 33-34.  Plaintiffs object to a number of these transactions, arguing that Saxon's signatories do not actually represent Saxon.

In July 2008, the interest rate reset and Plaintiffs had to begin paying down principal. The monthly payment increased by $1,000.  Plaintiffs fell behind on their payments.  Plaintiffs contacted Saxon, which sent them a financial worksheet, seeking information.  Plaintiffs returned the worksheet.  Saxon told Plaintiffs not to make any payments until the paperwork was complete.  Plaintiffs ceased making monthly payments.  On June 10, 2009, Plaintiffs received a trial loan modification offer from Saxon.  Under the Making Home Affordable Program ("HAMP"), Saxon allowed Plaintiffs to make three monthly payments of $1,700.74.  Plaintiffs complied and contacted Saxon in September 2009 to ask about permanent loan modification. The Saxon representative informed Plaintiffs a permanent loan modification would involve monthly payments of $1,400.  Plaintiffs continued to make three additional modified monthly payments.  In December 2009, Saxon offered Plaintiffs a permanent HAMP modification offer with an initial $1,829.87 monthly payment, eventually increasing to $2,454,05.  Plaintiffs rejected the offer and stopped making monthly payments.  On February 20, 2010, Plaintiff Edgardo Michel filed a Chapter 7 bankruptcy petition.

A notice of default was recorded on December 18, 2008.  A notice of trustee sale was recorded on March 24, 2009.  On April 21, 2010, RSC recorded a notice of rescission of the earlier notice of default. Doc. 3, Part 2, Ex. C, at 27.  RSC recorded a new notice of default on June 3, 2010. Doc. 3, Part 2, Ex. D, at 29.  RSC recorded a notice of trustee's sale on September 7, 2010, setting the date of the sale as September 28, 2010. Doc. 3, part 2, Ex. F, at 36.  The public auction took place on October 28, 2010; Deutsche purchased the property and RSC recorded a trustee's deed on November 4, 2010. Doc. 3, Part 2, Ex. G, at 40-41.

Plaintiffs filed suit in Superior Court, County of Stanislaus on November 9, 2010. The matter was removed to the Eastern District of California, Fresno Division on December 21, 2010. Plaintiffs list claims based on declaratory relief, cancellation of the trustee's deed upon sale, fraud in the factum, voiding the promissory note and deed of trust, quiet title, violations of the Truth in Lending Act ("TILA"), and violation of Cal. Bus. & Prof. Code 17200 ("UCL"). Defendants Deutsche and Saxon filed a motion to dismiss. Plaintiffs have filed an opposition. Defendants filed a reply and the matter was taken under submission without oral argument

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), citations omitted. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citations omitted. The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

4

State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated...laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint.  "There are, however, two exceptions....First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss...If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.  The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading. We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the

complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), citations omitted.

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### III. Discussion

#### A. Truth In Lending Act

Plaintiffs' sixth and seventh causes of action are based on TILA. "The purpose of the TILA is to ensure that users of consumer credit are informed as to the terms on which credit is offered them." Jones v. E*Trade Mortg. Corp., 397 F.3d 810, 812 (9th Cir. 2005). TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).

Title 15 U.S.C. §1639 requires that a creditor provides a number of disclosures when mortgage is signed. Plaintiffs allege these disclosures were not provided and that "The TILA cause of action is not barred by any statute of limitations, and equitable tolling is justified in this case due to Plaintiffs inability to read the English documents, and Defendants inequitable conduct in not providing Plaintiffs with a translation as required by California law." Doc. 1, Complaint at 19:23-25. For monetary damages, TILA has a one year statute of limitation: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. §1640(e). The one-year limitations period "runs from the date of consummation of the transaction but...the doctrine of equitable tolling may, in the appropriate circumstances, suspend

the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the TILA action." King v. California, 784 F.2d 910, 915 (9th Cir. 1986).  For purposes of TILA, "consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13); Grimes v. New Century Mortg. Corp., 340 F.3d 1007, 1009 (9th Cir. 2003).

In determining justifiable application of the equitable tolling doctrine, the court "focuses on excusable delay by the plaintiff." Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002). To establish excusable delay, the plaintiff must show "fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." Federal Election Com'n v. Williams, 104 F.3d 237, 240-41 (9th Cir. 1996).  First, the fact that a party does not speak English as a first language is not a basis for equitable tolling under TILA. See Carnero v. Wash. Mut., 2010 U.S. Dist. LEXIS 74583, *7 (N.D. Cal. July 22, 2010); but cf. Bojorquez v. Gutierrez, 2010 U.S. Dist. LEXIS 28302, *14-15 (N.D. Cal. Mar. 25, 2010) (complete inability to read the documents may be grounds for equitable tolling).  Second, Plaintiffs admit that "the fraud and nondisclosure were effectively concealed from Plaintiffs due to the terms of the loan. Three years after origination, following the initial period of interest-only fixed-rate payments, Plaintiffs were confronted with $1000.00 increase in their monthly payments, and realized the extent of the fraud." Doc. 8, Opposition, at 12:27-13:2.  The interest rate reset on the mortgage in July or August 2008. Plaintiffs did not file suit until November 2010, well over a year later.  Even accepting Plaintiffs' assertions, the limitations period has already run on the Section 1639 disclosure requirements. This claim is dismissed but Plaintiffs are given the opportunity to amend.

A separate provision of TILA states, "In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. §1641(g)(1).  The provision was enacted by Public Law 111-22, Title IV, Section 404 (May 20, 2009).  There are several

assignments of beneficial interest in this case.  Given the timing of the law, the only one which Section 1641(g) applies to is the assignment from Saxon back to Deutsche recorded on September 7, 2010. Doc. 3, Part 2, Ex. E.  Plaintiffs argue that Deutsche should have provided them notice of the transfer.  Defendants argue "section 1641 only applies to a '*new* owner or assignee of the debt'....Defendants are the original owners of the note and so are not implicated by the statute." Doc. 31, Part 1, Brief, at 12:5-8, citations omitted.  For this proposition, Defendants cite to a Northern District case which states "Defendants are the original owners of the note, and so are not implicated by the statute." Nicosia v. Wells Fargo Bank, 2010 U.S. Dist. LEXIS 116504, *6 (N.D. Cal. Oct. 25, 2010).  However, there is no factual background included in that order and there is no evidence that ownership of the mortgage was ever transferred; Section 1641(g) does not apply without a transfer.  In a factually analogous case where ownership was transferred back to a party, the Section 1641(g) notice requirement was found to apply. Schafer v. CitiMortgage, Inc., 2011 U.S. Dist. LEXIS 64558, *14-16 (C.D. Cal. June 15, 2011) ("once Citi assigned the interest it had in the DOT and Note, it became a third party to Plaintiff's DOT and Note. Thus, when MERS assigned or transferred any beneficial interest it had in the DOT and Note to Citi, Citi became the new creditor and would need to provide Plaintiff with [notice]").  In this circumstance, the Section 1641(g) requirements apply to the transfer from Saxon back to Deutsche.  Based solely on the arguments presented by the parties, Plaintiffs have stated a claim against Deutsche; the Section 1641(g) claim against Saxon is dismissed.

**B. Fraud in the Factum**

Plaintiffs allege that Ms. Haro made several misrepresentations to Plaintiffs when they were in the process of applying for mortgages.  Specifically, "that total amount of monthly payments would be $1,500.00, that the payments included taxes and insurance, and that the initial payments covered principal and interest." Doc. 1, Complaint, at 16:2-4.  Plaintiffs obtained their mortgages in August 2005 and began monthly payments soon thereafter.  However, Plaintiffs also state that "The monthly obligation on the first mortgage of $1575.00 represented

8

1  interest-only payments, exclusive of taxes and insurance; an additional $733.00 was owed on the
2  second mortgage....Total payments at the initial interest-only rate were $2,890.15." Doc. 1,
3  Complaint, at 6:5-11.  Thus, Plaintiffs were on notice that the mortgages were not as Ms. Haro
4  allegedly represented as soon as the first monthly payment was due.  The statute of limitation for
5  fraud under California law is three years. Cal. Code Civ. Proc. §338(d).  Plaintiffs did not file
6  suit until November 9, 2010, beyond the three year limitations period.  There does not appear to
7  be any basis for equitable tolling.  Plaintiffs' claim is dismissed, but leave to amend is granted.
8         Plaintiffs also state that their "cause of action for cancellation of the promissory note and
9  deed of trust [is] based on the fraud in the factum." Doc. 8, Opposition, at 10:17-19.  As the
10 fraud claim is being dismissed, so must be the cancellation of the promissory note and deed of
11 trust claim.
12
13 **C. Wrongful Foreclosure**
14        Several of Plaintiffs' claims are based on their allegations that the various transfers and
15 assignments were void, defeating foreclosure.  The declaratory relief, cancellation of the trustee's
16 deed upon sale, and quiet title causes of action appear to be founded on theories of wrongful
17 foreclosure.  Plaintiffs do not oppose dismissal of the claim for declaratory relief. Doc. 8,
18 Opposition, at 6:4-6.  Plaintiffs also concede that the quiet title claim is improperly plead,
19 requesting leave to amend. Doc. 8, Opposition, at 11:4-5.
20        Plaintiffs allege that the initial assignment of deed of trust from Argent to Deutsche is
21 void since Deutsche was not yet in existence when Argent signed the document.  Plaintiffs argue
22 the assignment, with the assignee filled in several months after the fact, is invalid.  Plaintiffs cite
23 to a case which found that changing the payee of a check constituted forgery. <u>Union Tool Co. v.
24 Farmers & Merchants Nat'l Bank</u>, 192 Cal. 40, 52 (Cal. 1923) ("The checks as originally drawn
25 were first altered by changing the name of the intended payee and afterward by fraudulently
26 indorsing the payee's name thereon. Those acts certainly amounted to forgery").  However,
27 another case states "one who affixes his signature to a printed blank or a bill of exchange or
28 promissory note, and entrusts it to another for the purpose of having the blanks filled in, cannot

9

be heard to deny that the latter was authorized to complete the same so far as is consistent with the printed words." Rancho San Carlos, Inc. v. Bank of Italy Nat'l Trust & Sav. Assoc., 123 Cal. App. 291, 295 (Cal. App. 1st Dist. 1932). The situation at hand is comparable to that of Rancho San Carlos as opposed to Union Tool. There is no indication that a different assignee was indicated when Argent's agent signed the document. See Doc. 1, Ex. B, at 46. Instead, it appears that she signed a document in which the assignee was left blank, to be filled in later. All required information was included by the time document was recorded.

Plaintiffs also object to the validity of the document substituting RSC in the place of TAC as trustee on the deed of trust. They argue that the document was signed by Christina Allen, purportedly an Assistant Vice President of Saxon when in fact she is not an officer of Saxon but rather an employee of third party Lender Processing Services, Inc. Doc. 1, Complaint, at 9:27-10:6. Defendants have not provided any judicially noticeable documents showing Christina Allen's affiliation with Saxon. If the substitution of trustee is invalid, then RSC had no authority to conduct a trustee's sale as TAC remains the trustee. This would constitute more than a technical defect. A trustee's sale undertaken by one who is not the valid trustee is void. See Dimock v. Emerald Properties, 81 Cal. App. 4th 868, 876 (Cal. App. 4th Dist. 2000); Pro Value Properties, Inc. v. Quality Loan Service Corp., 170 Cal. App. 4th 579, 581 (Cal. App. 2d Dist. 2009). Defendants have not addressed this problem, arguing Plaintiffs "fail to allege in their complaint or explain in their opposition brief why the sale is void and not voidable." Doc. 9, Reply, at 7:10-11. Based on the arguments presented, Plaintiffs appear to have stated a cause of action to cancel the trustee's deed upon sale.

**D. Cal. Bus. & Prof. Code 17200**

Plaintiff's UCL claims are based upon violation of the parameters of HAMP, TILA violations, and wrongful foreclosure. Doc. 1, Complaint, at 20:10-20. "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. &

Prof. Code §17200.  "The UCL defines unfair competition as 'any unlawful, unfair or fraudulent business act or practice.' Therefore, under the statute there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." In re Tobacco II Cases, 46 Cal. 4th 298, 311 (Cal. 2009), citations and quotations omitted.  For UCL actions under the unlawful prong, "an action based on Business and Professions Code §17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (Cal. 1992).  In this case, Plaintiffs borrow from the TILA and wrongful foreclosure claims.

However, there is no private cause of action under HAMP. See Hart v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 85272, *13-14 (E.D. Mich. Aug. 19, 2010); Zeller v. Aurora Loan Servs., LLC, 2010 U.S. Dist. LEXIS 80449, *2 (W.D. Va. Aug. 10, 2010); Hoffman v. Bank of Am., 2010 U.S. Dist. LEXIS 70455, *6 (N.D. Cal. June 30, 2010); Simon v. Bank of Am., 2010 U.S. Dist. LEXIS 63480, *26-27 (D. Nev. June 23, 2010); Marks v. Bank of Am., 2010 U.S. Dist. LEXIS 61489, *13 (D. Ariz. June 22, 2010); De La Salle v. America's Wholesale Lender, 2010 U.S. Dist. LEXIS 36319, *3-4 (E.D. Cal. Apr. 13, 2010); Aleem v. Bank of Am., 2010 U.S. Dist. LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010).  "A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Plaintiffs have not stated a claim for violation of HAMP procedures.

### IV. Order

Defendants Deutsche's and Saxon's motion to dismiss is GRANTED in part and DENIED in part.  With regard to these Defendants, the declaratory relief, fraud in the factum, voiding the promissory note and deed of trust, quiet title, violation of 15 U.S.C. §1641(g) claim against Saxon, and violation of 15 U.S.C. §1639 causes of action are dismissed.  The remaining claims against these Defendants are the cancellation of the trustee's deed upon sale, violation of

15 U.S.C. §1641(g) claim against Deutsche, and Cal. Bus. & Prof. Code 17200 causes of action. Plaintiffs are granted leave to amend all claims. Plaintiffs may file an amended complaint within twenty eight (28) days of the filing of this order. Defendants must file an answer within forty nine (49) days of the filing of this order.

IT IS SO ORDERED.

Dated:     September 30, 2011

CHIEF UNITED STATES DISTRICT JUDGE