1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                    **EASTERN DISTRICT OF CALIFORNIA**
8
9    **EDGARDO MICHEL AND ALIS**        )    **CASE NO. 1:10-CV-2375 AWI SKO**
     **SALINAS DE MICHEL,**             )
10                                       )    **ORDER RE: MOTIONS TO**
              **Plaintiffs,**           )    **DISMISS**
11                                       )
     **v.**                             )
12                                       )
     **DEUTSCHE BANK TRUST COMPANY,**   )
13   **AS TRUSTEE FOR GSAA HOME**       )
     **EQUITY TRUST 2006-2; SAXON**     )
14   **MORTGAGE SERVICES, INC.,;**      )
     **REGIONAL SERVICE CORPORATION;**  )
15   **ARGENT MORTGAGE COMPANY;**       )
     **AND DOES 1 to 50 iNCLUSIVE,**    )
16                                       )
              **Defendants.**           )
17   _____    )
18
19
20                         **I. History**[1]

21        Plaintiffs Edgardo Michel and Alis Salinas de Michel ("Plaintiffs") purchased 5025

22   Countryridge Lane, Salida, CA on August 24, 2005.  Plaintiffs financed the purchase with two

23   loans from Defendant Argent Mortgage Company ("Argent") in the amounts of $360,000 and

24   $90,000.  The subject of this suit is the larger loan ("Subject Loan"); the smaller loan was

25   refinanced in May 2007 with third party Bank of America.  In procuring financing, Plaintiffs had

26   ───────────────

27        [1]The factual history is provided for background; the assertions contained therein are not
     necessarily taken as adjudged to be true.  The legally relevant facts relied upon by the court are
28   discussed within the analysis.

                                          1

responded to an advertisement from third party Mi Tierra Mortgage and Real Estate Inc. ("Tierra"). Plaintiffs' primary language is Spanish; their English is extremely limited. Plaintiffs worked with a Tierra employee, Ruby Haro, and all communications with Ms. Haro and Tierra were in Spanish. On Plaintiffs' behalf, Ms. Haro applied for the loans with Argent. Plaintiffs signed the loan documents on August 7, 2005 at Tierra's office. Ms. Haro was expected to be present but did not show up. Due to typographical errors, the loan documents had to be signed again on August 14, 2005. Plaintiffs were not provided with copies of initial disclosures required under the Truth in Lending Act ("TILA").

Plaintiffs allege Ms. Haro was acting as an agent for Argent. Doc. 29, FAC, 7:12-16. Plaintiffs initially sought to pay a down payment and have a thirty year fixed interest rate mortgage. Ms. Hara convinced them to get an adjustable rate mortgage with no down payment. The Subject Loan was a thirty year adjustable rate mortgage with an initial period of three years during which the monthly payments only covered interest. After three years, the interest rate would reset and payments would increase to start paying off principal and the higher interest rate. Ms. Haro told Plaintiffs that the monthly payments would be $1,500 including taxes and insurance. The actual mortgage payments in the initial three year period were $2,890.15. Plaintiffs allege Tierra falsely represented Plaintiffs' monthly income as $9,752.02 on the loan application though the actual amount was $4,516.00. Plaintiffs allege Argent provided Tierra with information about what should be put on the loan application form in order to obtain loans of the specified amounts, knowing that Tierra would falsify loan applications to meet the requirements. Upon receipt of the first payment, Plaintiffs realized that their monthly payments exceeded $1,500 once taxes and insurance was considered. Ms. Haro told them that her earlier communication was a mistake.

The loan servicer was Defendant Saxon Mortgage Services, Inc. ("Saxon"). The original deed of trust on the Subject Loan specified Plaintiffs as the "borrower"; Argent as the "lender" and "beneficiary"; and third party Town and Country Title Services, Inc. ("TAC") as "trustee." The deed of trust was signed before a notary public on August 12, 2005 and recorded on August 24, 2005. Doc. 1, Ex. A, at 28-42. Argent executed an assignment of the deed of trust in favor of

1  Defendant Deutsche Bank Trust Company ("Deutsche") as Trustee for GSAA Home Equity
2  Trust 2006-2 ("GSAA").  The notary public affirmed that Argent's agent signed the document on
3  August 26, 2005 though the document is dated August 23, 2005; the assignment was not
4  recorded until June 15, 2007. Doc. 1, Ex. B, at 45-46.  Plaintiffs point out that the GSAA was not
5  created until January 6, 2006. Doc. 1, Complaint, at 8:9-10.  On January 23, 2009, a Deutsche
6  representative signed an assignment of the deed of trust in favor of Saxon; the assignment was
7  recorded on January 28, 2009. Doc. 3, Part 2, Ex. B, at 24.  On January 9, 2009, a Saxon
8  representative signed a substitution of trustee, removing TAC in favor of Defendant Regional
9  Service Corporation ("RSC"); the substitution of trustee was recorded on March 24, 2009. Doc.
10  1, Ex. C, at 48.  On June 3, 2010, a Saxon representative signed an assignment of the deed of
11  trust in favor of Deutsche as trustee for GSAA, the assignment was recorded on September 7,
12  2010. Doc. 3, Part 2, Ex. E, at 33-34.  Plaintiffs object to a number of these transactions, arguing
13  that Saxon's signatories do not actually represent Saxon.

14         In July 2008, the interest rate reset and Plaintiffs had to begin paying down principal.
15  The monthly payment increased by $1,000.  Plaintiffs fell behind on their payments.  Plaintiffs
16  contacted Saxon, which sent them a financial worksheet, seeking information.  Plaintiffs returned
17  the worksheet.  Saxon told Plaintiffs not to make any payments until the paperwork was
18  complete.  Plaintiffs ceased making monthly payments.  On June 10, 2009, Plaintiffs received a
19  trial loan modification offer from Saxon.  Under the Making Home Affordable Program
20  ("HAMP"), Saxon allowed Plaintiffs to make three monthly payments of $1,700.74.  Plaintiffs
21  complied and contacted Saxon in September 2009 to ask about permanent loan modification.
22  The Saxon representative informed Plaintiffs a permanent loan modification would involve
23  monthly payments of $1,400.  Plaintiffs continued to make three additional modified monthly
24  payments.  In December 2009, Saxon offered Plaintiffs a permanent HAMP modification offer
25  with an initial $1,829.87 monthly payment, eventually increasing to $2,454,05.  Plaintiffs
26  rejected the offer and stopped making monthly payments.  On February 20, 2010, Plaintiff
27  Edgardo Michel filed a Chapter 7 bankruptcy petition.

28         A notice of default was recorded on December 18, 2008.  A notice of trustee sale was

recorded on March 24, 2009.  On April 21, 2010, RSC recorded a notice of rescission of the earlier notice of default. Doc. 3, Part 2, Ex. C, at 27.  RSC recorded a new notice of default on June 3, 2010. Doc. 3, Part 2, Ex. D, at 29.  Also on June 3, 2010, the deed of trust was reassigned back to Deutsche for the benefit of GSAA. Doc. 29, FAC, 12:7-9.  RSC recorded a notice of trustee's sale on September 7, 2010, setting the date of the sale as September 28, 2010. Doc. 3, part 2, Ex. F, at 36.  The public auction took place on October 28, 2010; Deutsche purchased the property and RSC recorded a trustee's deed on November 4, 2010. Doc. 3, Part 2, Ex. G, at 40-41.

Plaintiffs filed suit in Superior Court, County of Stanislaus on November 9, 2010.  The matter was removed to the Eastern District of California, Fresno Division on December 21, 2010. Defendants Saxon and Deutsche filed a motion to dismiss, which was granted in part.  Plaintiffs were granted leave to amend.  The operative complaint is the First Amended Complaint ("FAC"). Doc. 29.  Plaintiffs' causes of action are: (1) wrongful foreclosure, (2) to cancel the trustee's deed upon sale, (3) fraud in the factum, (4) to void the promissory note and deed of trust, (5) to quiet title, (6) violation of 15 U.S.C. § 1641(g), TILA, (7) violation of 12 U.S.C. § 2605, the Real Estate Settlement Procedures Act ("RESPA"), and (8) Cal. Bus. & Prof. Code 17200, unfair business practices.  Defendants Argent, Deutsche, and Saxon have filed two motions to dismiss.  Plaintiffs have filed an opposition.  Defendants filed reply and the matter was taken under submission without oral argument.  Of note, none of the Defendants challenge the seventh cause of action under TILA.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

1    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

2    of action will not do. Factual allegations must be enough to raise a right to relief above the

3    speculative level, on the assumption that all the allegations in the complaint are true (even if

4    doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that

5    actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56

6    (2007), citations omitted.  "[O]nly a complaint that states a plausible claim for relief survives a

7    motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the

8    Court of Appeals observed, be a context-specific task that requires the reviewing court to draw

9    on its judicial experience and common sense. But where the well-pleaded facts do not permit the

10   court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it

11   has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

12   (2009), citations omitted.  The court is not required "to accept as true allegations that are merely

13   conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

14   State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general

15   allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l

16   Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957),

17   overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is

18   whether there is any set of "facts that could be proved consistent with the allegations of the

19   complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S.

20   506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts

21   which [they have] not alleged, or that the defendants have violated...laws in ways that have not

22   been alleged." Associated General Contractors of California, Inc. v. California State Council of

23   Carpenters, 459 U.S. 519, 526 (1983).

24          In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited

25   to reviewing only the complaint.  "There are, however, two exceptions....First, a court may

26   consider material which is properly submitted as part of the complaint on a motion to dismiss...If

27   the documents are not physically attached to the complaint, they may be considered if the

28   documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.

1  Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record."
2  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.  The Ninth
3  Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which
4  permits us to take into account documents whose contents are alleged in a complaint and whose
5  authenticity no party questions, but which are not physically attached to the plaintiff's pleading.
6  We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's
7  claim depends on the contents of a document, the defendant attaches the document to its motion
8  to dismiss, and the parties do not dispute the authenticity of the document, even though the
9  plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v.
10  ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court may not look beyond
11  the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a
12  defendant's motion to dismiss. Facts raised for the first time in opposition papers should be
13  considered by the court in determining whether to grant leave to amend or to dismiss the
14  complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003),
15  citations omitted.

16  If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without
17  prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend
18  even if no request to amend the pleading was made, unless it determines that the pleading could
19  not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th
20  Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other
21  words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX,
22  Inc., 298 F.3d 893, 898 (9th Cir. 2002).

23

24  **III. Discussion**
25  **A. Wrongful Foreclosure Claims**

26  The first (wrongful foreclosure), second (to cancel the trustee's deed upon sale), and fifth
27  (quiet title) causes of action are based upon claims that the foreclosure was void as the proper
28  procedure was not followed.  In essence, they are one cause of action coupled with different

**6**

1   requests for relief; they include claims against all Defendants.  In looking at the allegations, there

2   appear to be a series of interrelated issues.  First, Plaintiffs allege that GSAA does not exist.  Doc.

3   29, FAC, 15:16- 17.  Second Plaintiffs allege the transfer of the deed of trust from Deutsche to

4   Saxon was ineffective as the promissory note remained with Deutsche and Deutsche lacked

5   capacity to convey title. Doc. 29, FAC, 16:3-8.  Third, Plaintiffs allege the substitution of trustee

6   from TAC to RSC was ineffective because Saxon was not the beneficiary at the time the

7   substitution was executed. Doc. 29, FAC, 15:21-22.  Fourth, the substitution from TAC to RSC

8   was ineffective because the document was signed by Christina Allen, who was not an officer of

9   Saxon. Doc. 29, FAC, 15:26-28.

10         The first two objections concern the transfer of the deed of trust.  First, Plaintiffs allege

11   that GSAA never existed and thus any transfer from Argent to Deutsche acting as trustee for

12   GSAA was a legal nullity. Doc. 29, FAC, 16-17.  This appears to be based on the assertion that

13   "a GSAA 2006-2 trust...has never existed and no such trust is registered with the Securities and

14   Exchange Commission." Doc. 29, FAC, 8:8-10.  However, Plaintiffs also allege that "The

15   Goldman Sachs trust administered by DEUTSCHE 'GSAA Home Equity Trust 2006-2'...is an

16   actual entity registered with the SEC. The Pooling and Servicing Agreement...is available online

17   at http://www.sec.gov/Archives/edgar/data/807641/000090514806001043/efc6-0400_fwp.txt."

18   Doc. 29, FAC, 12:12-15.  Plaintiffs' latter allegations, backed by SEC documentation, directly

19   controverts any assertion that GSAA does not exist.  Further, the transfer was to Deutsche for

20   GSAA's benefit, not GSAA.  Plaintiffs have not explained how such a transfer to Deutsche

21   would be invalid even if GSAA did not exist.

22         Second, Plaintiffs argue the transfer from Deustche to Saxon was invalid.  "DEUSTCHE,

23   as trustee for the non-existent GSAA Trust lacked capacity to convey title." Doc. 29, FAC, 16:4-

24   5.  As stated, Plaintiffs have provided the judicially noticeable documentation that shows GSAA

25   did in fact exist.  Plaintiffs also appear to argue that Deustche did not transfer physical possession

26   of the promissory note to Saxon: "the Promissory Note necessarily remained with DEUTSCHE,

27   as required under SEC and IRS laws governing mortgage-backed securities. This attempt to

28   transfer the Deed of Trust to SAXON without the Promissory Note is void under California law."

1    Doc. 29, FAC, 16:5-8.  Plaintiffs disclaim any claim based on securitization. Doc. 37,

2    Opposition, 4:10-12.  Physical possession and legal status as holder of a promissory note are

3    distinct concepts.  The holder of the note is the party entitled to enforce it. See In re Kang Jin

4    Hwang, 393 B.R. 701, 707 (Bankr. C.D. Cal. 2008).  When the beneficial interest of a deed of

5    trust is sold, physical transfer of the promissory note is not required. See, e.g. In re Golden Plan

6    of Cal., Inc., 829 F.2d 705, 708-11 (9th Cir. Cal. 1986) (agreement transferring proceeds of note,

7    including hiring agent to handle monthly payment collections and potential foreclosure

8    proceedings, but no physical transfer of mortgage note was nevertheless a sale).  "There is no

9    requirement in California that the holder of a note be in actual physical possession of it in order

10   to foreclose. See Cal. Com. Code § 3309." Pineda v. Saxon Mortg. Services, Inc., 2008 U.S.

11   Dist. LEXIS 102439, *7 n.2 (C.D. Cal., Dec. 10, 2008).

12       The second two objections deals with the substitution of trustee.  If the substitution of

13   trustee is invalid, then RSC had no authority to conduct a trustee's sale as TAC remains the

14   trustee.  This would constitute more than a technical defect.  A trustee's sale undertaken by one

15   who is not the valid trustee is void. See Dimock v. Emerald Properties, 81 Cal. App. 4th 868, 876

16   (Cal. App. 4th Dist. 2000); Pro Value Properties, Inc. v. Quality Loan Service Corp., 170 Cal.

17   App. 4th 579, 581 (Cal. App. 2d Dist. 2009).  The above discussion shows that Plaintiff has not

18   sufficiently alleged that the trust of deed transfers were invalid; Saxon was the beneficiary at the

19   time Saxon substituted RSC for TAC as the trustee.

20       Plaintiffs' fourth argument concerns the status of Christina Allen, the person who actually

21   signed the substitution of trustee.  They argue that though she purported to be an Assistant Vice

22   President of Saxon, she was not in fact an officer of Saxon but rather an employee of third party

23   Lender Processing Services, Inc. Doc. 1, Complaint, at 9:27- 10:6.  Defendants have not provided

24   any judicially noticeable documents showing Christina Allen's affiliation with Saxon.  Some

25   courts have found that such an allegation is insufficient to state a claim. See Gill v. Wells Fargo

26   Bank, N.A., 2011 U.S. Dist. LEXIS 73729, *18 (E.D. Cal. July 5, 2011).  With respect to Lender

27   Processing Services specifically, one court states:

28       Plaintiff has failed to allege sufficient facts establishing that Greg Allen lacked the

authority to sign on behalf of the trustee for the BSALTA 2005-10 trust. Although Allen was employed by Lender Processing Services ('LPS'), not Bank of New York Mellon, there is no evidence that Allen was acting as something other than an agent for Bank of New York Mellon. In Bain v. Met. Mortg. Group, Inc., 2010 U.S. Dist. LEXIS 22690, 2010 WL 891585, at * 6 (W.D. Wash. 2010), the court explained that LPS employees are granted the power to sign documents on behalf of entities such as IndyMac by way of express contracts: 'LPS openly and lawfully allows its employees to sign on behalf of its clients, pursuant to contract — which is the essence of ordinary agency action everywhere. There is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions.' It does not appear that the Bank of New York Mellon  has objected to Allen signing on its behalf, and Plaintiff has not alleged any facts supporting her conclusion that the Substitution of Trustee was a 'forged' document.

Selby v. Bank of Am., Inc., 2011 U.S. Dist. LEXIS 25427, *9-10 (S.D. Cal. Mar. 14, 2011). However, other courts have found that such allegations are sufficient to state a claim. See Tang v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 38642, *33-36 (C.D. Cal. Mar. 19, 2012) ("Defendants submit no judicially noticeable documents showing that Sevillano was indeed an agent for BOA and not MERS").  This court concludes that this issue is more appropriately resolved at the summary judgment stage. See Milyakov v. JP Morgan Chase, N.A., 2012 U.S. Dist. LEXIS 35415, *12-13 (N.D. Cal. Mar. 15, 2012).

Deutsche and Saxon argue that Plaintiffs "cannot possibly identify any prejudice caused by who signed the substitution." Doc. 32, Deutsche and Saxon Brief, 10:20-21.  They explain that Plaintiffs "still could not set aside a voidable sale absent resulting prejudice." Doc. 39, Deutsche and Saxon Reply, 3:21-22.  However, the surviving claim is that a non-trustee did the foreclosure sale; as far as can be determined, such a sale would be void rather than voidable. See Dimock v. Emerald Properties, 81 Cal. App. 4th 868, 876 (Cal. App. 4th Dist. 2000).  Even assuming prejudice is required, there appears to be at least a small amount of monetary damage. Sorting through the paperwork to properly initiate foreclosure proceedings would have taken some period of time.  The substitution of trustee had to be properly recorded before the actual foreclosure was completed. See Ohlendorf v. Am. Brokers Conduit, 2012 U.S. Dist. LEXIS 28862, *38 (E.D. Cal. Mar. 5, 2012).  A valid foreclosure would have been delayed.  Even though the foreclosure would have eventually taken place as Plaintiffs could not make the mortgage payments, Plaintiffs would not have lost their home until a later date.  The damages

may be some amount of rent for that period of time.  At this point in the litigation, the court can not say with certainty that Plaintiffs suffered no prejudice.

These causes of action may proceed under the theory that the substitution of trustee was ineffective due to the status of Christina Allen.  All other theories supporting these causes of action are dismissed without prejudice.

**B. Fraud Claims**

Plaintiffs' third (fraud) and fourth (to void the promissory note and deed of trust) causes of action are based upon claims of fraud.  Again, they essentially form one cause of action coupled with a specific request for relief; the claims are against Deutsche, Saxon, and Argent. Under California law, the "elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 990 (2004).  Federal Rule of Civil Procedure 9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct...so that they can defend against the charge and not just deny that they have done anything wrong."  Though the substantive elements of fraud are set by a state law, those elements must be pled in accordance with the requirements of Rule 9(b). See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  Allegations of fraud should specifically include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).  "The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  Stated differently, the complaint must identify "the who, what, when, where, and how" of the fraud. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

In the first part of their claim, Plaintiffs allege "100. As set forth above, HARO made representations about essential terms of the Subject Loan including, without limitation, that total

amount of monthly payments would be $1,500.00, that the payments included taxes and insurance, and that the initial payments covered princip[al] and interest. 101. The representations made by HARO were in fact false. The true facts were that the monthly payment was based on the interest-only period, did not include taxes and insurance, and would increase substantially after three years." Doc. 29, FAC, 17:29-18:6.  From this language, Plaintiffs appear to make two distinct claims.  First, Ms. Haro told them the $1,500 monthly payment was supposed to include taxes and insurance when it in fact did not include those additional costs.  Second, Ms. Haro told them the $1,500 monthly payment was supposed to last the duration of the 30 year loan period when in fact it only lasted for three years.  As Defendants point out, Plaintiffs' allegation as to the misrepresentations are vague. Doc. 32, Deutsche and Saxon Brief, 17:3-4; see also Doc. 30, Argent Brief, 6:27-28 ("The 'misrepresentations' that Plaintiffs lay out in the FAC address the monthly payments due on the Loan and the interest rate of the Loan").

       The first claimed misrepresentation was discussed in the prior motion to dismiss.  The court found that "Plaintiffs were on notice that the mortgages were not as Ms. Haro allegedly represented as soon as the first monthly payment was due" in 2005 and dismissed the claim due to the three year statute of limitations. Doc. 22, October 3, 2011 Order, 9:3-7.  Indeed, Plaintiffs admit that "they became aware shortly after origination that their monthly payments on the Subject Loan did not include taxes and insurance, contrary to the representations of HARO." Doc. 37, Opposition, 5:27-6:1.  This claim is time barred.

       The second claimed misrepresentation was not analyzed in the prior motion.  The mortgage payment increased after the initial three year period.  Plaintiffs argue "Material terms of the Subject Loan that were misrepresented by the mortgage broker are set fourth at Paragraph 26." Doc. 37, Opposition, 4:28-5:2.  That paragraph states, in relevant part "Plaintiff[s] [were] unaware at the time of the loan closing, and did not discover until later, that TIERRA ha[d] misrepresented the terms of the Subject Loan. Misrepresentations by HARO included:....The initial interest rate of 5.25% was fixed for the first three years, with an adjustable interest rate for the remainder of the 30-year term, adjusted every six months, with a floor of 5.25% and ceiling of 11.25%." Doc. 29, FAC, 6:5-13.  Paragraph 26 sets out the actual terms of the Subject Loan

1   and does not state the exact nature of the misrepresentation.  However, Plaintiffs appear to allege

2   that Ms. Haro told them that their monthly payments would not increase after three years. Doc.

3   29, FAC, 18:6.  This claim is undercut by Plaintiffs' other statements.  Plaintiffs admit that

4   "HARO informed Plaintiffs that because everyone sells or refinances within three years, a 30-

5   year fixed rate loan no longer existed. However, HARO assured Plaintiffs that the interest rate on

6   their loan would be fixed for three years." Doc. 29, FAC, 4:15-18.  That is, Plaintiffs knew that

7   the interest rate and monthly payment would increase, starting in 2008.  Plaintiffs fail to allege a

8   misrepresentation.

9          The court notes that the other requirements of fraud against all Defendants are

10  insufficiently plead.  However, Argent argues that "There is no agency relationship between

11  Argent and Plaintiffs' broker as a matter of law....It is well settled that a mortgage broker is the

12  agent of the *borrower* and not the lender." Doc. 30, Argent Brief, 8:5-8, emphasis in the original.

13  California law provides that a mortgage broker can be a dual agent: "'Mortgage brokerage

14  services' means arranging or attempting to arrange, as exclusive agent for the borrower or as dual

15  agent for the borrower and lender, for compensation or in expectation of compensation, paid

16  directly or indirectly, a residential mortgage loan made by an unaffiliated third party." Cal. Civ.

17  Code § 2923.1(b)(3).  Plaintiffs admit that Ms. Haro/Tierra was their agent, but also plead that

18  they were also an agent of Argent. Doc. 29, FAC, 7:12-16.

19         Plaintiffs also allege that the loan they entered into was unconscionable. Doc. 29, FAC,

20  18:7-9 ("The misrepresentations were designed to induce Plaintiffs to enter into an

21  unconscionable contract for the sole benefit of Defendants").  "If the court as a matter of law

22  finds the contract or any clause of the contract to have been unconscionable at the time it was

23  made the court may refuse to enforce the contract, or it may enforce the remainder of the contract

24  without the unconscionable clause, or it may so limit the application of any unconscionable

25  clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a).  California courts

26  understand the doctrine (as codified in the cited section) acts as only a defense against the

27  enforcement of unconscionable contracts:

28         The doctrine of unconscionability has historically provided only a defense to enforcement

of a contract, and normally cannot be used offensively to obtain mandatory injunctive relief. As embodied in Civil Code section 1670.5, the doctrine is phrased in defensive terms: a court 'may refuse to enforce' an unconscionable contract or 'may enforce the remainder' of a contract without an unconscionable clause. ( Civ. Code, § 1670.5, subd. (a).) The statute does not in itself create an affirmative cause of action but merely codifies the defense of unconscionability. (Dean Witter Reynolds, Inc. v. Superior Court (1989) 211 Cal.App.3d 758, 766 [259 Cal.Rptr. 789].)

An affirmative cause of action for unconscionability may be provided by statute. This has occurred in the Consumers Legal Remedies Act ( Civ. Code, § 1750 et seq.), which expressly permits a consumer to bring an action for damages and injunctive relief based on insertion of an unconscionable provision in a contract.

California Grocers Assn. v. Bank of America, 22 Cal. App. 4th 205, 217 (Cal. App. 1st Dist. 1994).  The Ninth Circuit has recognized that "Under California law, however, unconscionability is an affirmative defense, not a cause of action." Rubio v. Capital One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010), citations omitted.  In similar circumstances involving foreclosures, courts have dismissed unconscionability claims that are based upon Cal. Civ. Code § 1670.5(a). See, e.g. Malixi v. United States Bank, N.A., 2012 U.S. Dist. LEXIS 112318, *17-18 (E.D. Cal. Aug. 9, 2012).

Plaintiffs also claim they "relied on SAXON's misrepresentations of good faith negotiations to evaluate Plaintiffs for a loan modification." Doc. 29, FAC, 19:2-3.  The factual basis for the claim was that "Plaintiffs received an offer from SAXON for a trial modification under [HAMP]....After completion of the trial period, Plaintiffs loan was to be permanently modified." Doc. 29, FAC, 11:3-8.  Plaintiffs' claim appears to be based on the denial of a permanent modification.  "[L]enders are not required to make loan modifications for borrowers that qualify under HAMP nor does the servicer's agreement confer an enforceable right on the borrower." Hoffman v. Bank of America, 2010 WL 2635773, *5 (N.D. Cal. June 30, 2010).  Plaintiffs have not sufficiently alleged any misrepresentation, let alone fraud.

As previously stated, Plaintiffs' fraud allegations are not altogether clear.  The court has tried to address a fair reading of them.  Plaintiffs' fraud claims are dismissed without prejudice.

**C. RESPA**

In the FAC, Plaintiffs added a RESPA claim that was not in the original complaint.

1   Plaintiffs' RESPA claim is against Saxon only.  Plaintiffs allege they sent a qualified written

2   request ("QWR") to Saxon on June 4, 2010 that was improperly handled; specifically that Saxon

3   failed to "address Plaintiffs' request to identify the current holder of the Subject Loan, to provide

4   a[n] accounting throughout the life of the loan, or to produce copies of collection notices and

5   other communications related to the servicing of the loan." Doc. 29, FAC, 22:7-12.  Under

6   RESPA, a servicer must respond to a QWR from a borrower "for information relating to the

7   servicing of such loan." 12 U.S.C. § 2605(e)(1)(A).  The requirements of a QWR are specific: "a

8   qualified written request shall be a written correspondence, other than notice on a payment

9   coupon or other payment medium supplied by the servicer, that- (i) includes, or otherwise

10  enables the servicer to identify, the name and account of the borrower; and (ii) includes a

11  statement of the reasons for the belief of the borrower, to the extent applicable, that the account

12  is in error or provides sufficient detail to the servicer regarding other information sought by the

13  borrower." 12 U.S.C. §2605(e)(1)(B).  A servicer must then investigate and "provide the

14  borrower with a written explanation or clarification that includes (i) information requested by the

15  borrower or an explanation of why the information requested is unavailable or cannot be

16  obtained by the servicer." 12 U.S.C. §2605(e)(2)(C).  In order to state a cause of action,

17  plaintiffs must "specifically allege they sent, or Defendants received, a specific, written

18  correspondence meeting RESPA's QWR requirements." <u>Tina v. Countrywide Home Loans, Inc.</u>,

19  2008 U.S. Dist. LEXIS 88302, *16 (S.D. Cal. Oct. 30, 2008).

20      Saxon argues that Plaintiffs did not make a valid QWR because Plaintiffs "do not identify

21  what servicing error they were disputing or how Saxon failed to respond." Doc. 32, Deutsche and

22  Saxon Brief, 20:1-2.  That argument ignores the fact that a borrower may request information

23  related to the servicing of the loan in a QWR: "statement of the reasons for the belief of the

24  borrower, to the extent applicable, that the account is in error or provides sufficient detail to the

25  servicer regarding ***other information sought by the borrower***." 12 U.S.C. §2605(e)(1)(B)(ii),

26  emphasis added; <u>Lawther v. OneWest Bank, FSB</u>, 2012 U.S. Dist. LEXIS 12062, *45 (N.D. Cal.

27  Feb. 1, 2012) ("The Court rejects OneWest's argument that Plaintiff's letter did not constitute a

28  QWR because it failed to state Plaintiff's reasons for believing the account was in error. Section

**14**

1    2605(e)(1)(B) is written in the disjunctive and therefore does not require that a QWR necessarily

2    contain 'a statement of the reasons for the belief of the borrower, to the extent applicable, that the

3    account is in error'").  "[W]hile the letter does not appear to  contain a statement of the reasons

4    for the borrower's belief that the account is in error, construed in the light most favorable to

5    Plaintiff it provides sufficient detail regarding 'other information' sought by the borrower.

6    Indeed, it appears to request a vast amount of information." Garcia v. Wachovia Mortg. Corp.,

7    676 F. Supp. 2d 895, 909 (C.D. Cal. 2009), citations omitted.

8         Plaintiffs ask for two things, the identity of the holder of the Subject Loan and an

9    accounting of the loan.  The identity of the holder does not relate to loan servicing.  "A QWR

10   must seek information relating to the servicing of the loan; a request for loan origination

11   documents is not a QWR." Esoimeme v. Wells Fargo Bank, 2011 U.S. Dist. LEXIS 98492, *40

12   (E.D. Cal. Sept. 1, 2011).  "[A] QWR must address the servicing of the loan, and not its

13   validity." Consumer Solutions Reo, LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal.

14   2009).  An accounting of the loan (history of payments and future amounts due) does appear to

15   relate to loan servicing.  Thus, a request for an accounting appears to be a valid QWR. See

16   Coleman v. Countrywide Home Loans, Inc., 2009 Bankr. LEXIS 4401, *31-33 (Bankr. D.D.C.

17   May 11, 2009) (a request for "a 'detailed accounting' of the charges comprising his $43,147.18

18   default obligation" was an invalid QWR since request was addressed to servicer's attorney

19   instead of servicer itself).

20        Case law from district courts in California state that RESPA does not provide for an

21   accounting. See, e.g. Zendejas v. GMAC Wholesale Mortg. Corp., 2010 U.S. Dist. LEXIS

22   59793, *20 (E.D. Cal. June 15, 2010) ("Title 12 United States Code, section 2605, which

23   imposes upon a loan servicer an obligation to respond to borrower inquiries, does not provide for

24   an accounting"); Gaitan v. Mortg. Elec. Registration Sys., 2009 U.S. Dist. LEXIS 97117, *36

25   (C.D. Cal. Oct. 5, 2009); Orozco v. DHI Mortg. Co., 2010 U.S. Dist. LEXIS 69563, *18 (S.D.

26   Cal. July 13, 2010).  However, those cases appear to deal with accounting as a form of relief for a

27   RESPA violation.  In general, plaintiffs may not request an accounting from the court as a

28   remedy under RESPA.  In this case, the failure to provide an accounting is the RESPA violation

1   that gives rise to the cause of action.  A request for an accounting can be a valid QWR. But see

2   Orozco v. Experian Info. Solutions, 2012 U.S. Dist. LEXIS 94676, *8 and 10 (E.D. Cal. July 6,

3   2012) ("Plaintiffs argue that the letter they sent Seterus on December 15, 2011, requesting the

4   identity of all parties with an interest in the Mortgage and an accounting of all payments and

5   credits was a QWR under RESPA and TILA...Plaintiffs do not allege that in their letter they

6   stated a reason they believed their account was in error, nor do they allege any damages from

7   Seterus's failure to respond. Furthermore, they request an accounting, which is also not provided

8   for under RESPA").

9        Plaintiffs' RESPA claim fails for lack of damages.  "To state a claim for relief under

10  RESPA, a plaintiff must allege either a purported pattern or practice of violating the statute or

11  actual damages caused by the asserted violation." Naranjo v. SBMC Mortg., 2012 U.S. Dist.

12  LEXIS 103735, *20 (S.D. Cal. July 24, 2012).  Plaintiffs have plead neither actual damages not a

13  pattern.  Plaintiffs' RESPA claim is dismissed without prejudice

14

15  **D. Unfair Business Practices**

16       "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business

17  act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by

18  Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and

19  Professions Code." Cal. Bus. & Prof. Code §17200.  "The UCL defines unfair competition as

20  'any unlawful, unfair or fraudulent business act or practice.' Therefore, under the statute there are

21  three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." In re

22  Tobacco II Cases, 46 Cal. 4th 298, 311 (Cal. 2009), citations and quotations omitted.  For unfair

23  business practices actions under the unlawful prong, "an action based on Business and

24  Professions Code §17200 to redress an unlawful business practice 'borrows' violations of other

25  laws and treats these violations, when committed pursuant to business activity, as unlawful

26  practices independently actionable under section 17200 et seq. and subject to the distinct

27  remedies provided thereunder." Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (Cal.

28  1992).

1    With respect to Saxon, Plaintiffs allege violations of Cal. Bus. & Prof. Code § 17200

2 through:

3    A. Using false and deceptive statements during loss mitigation efforts to induce
homeowners to make payments during trial loan modification period, including
4    misrepresenting the intent to consider or offer modifications in good faith and deceptively
representing the true terms and monthly payments under the loan modification during oral
5    communications.

6    B. Continuing to obfuscate the true beneficiary of the promissory note despite the new
statutory requirement for disclosure under 15 U.S.C. § 1641(g) and a clear mandate by the
7    current presidential administration to make these sales transactions transparent to
consumers.
8
9    C. Engaging ro utilizing the services of 'robo-signers' to execute documents containing
false statements as to the identity and authority of the signor, causing recordation in the
public land records of such knowingly false documents.
10

11 Doc. 29, FAC, 22:28:23:11. The allegations in parts B and C are identical to those in the original

12 complaint.  In the order resolving the prior motions to dismiss, the court found that parts B and C

13 stated a claim by borrowing from TILA and wrongful foreclosure violations.  As Plaintiffs'

14 wrongful foreclosure cause of action survives, Plaintiffs have stated an unfair business practices

15 claim based on those allegations.

16    Saxon points out, though, that Plaintiffs' TILA claim is only made against Deutsche and

17 the UCL claim is only made against Saxon. Doc. 32, Deutsche and Saxon Brief, 22:10-11.  The

18 actions complained of is the lack of notice in June 2010 when the deed of trust was assigned

19 from Saxon to Deutsche for the benefit of GSAA.  The TILA provision, 15 U.S.C. § 1641, only

20 discusses the "liability of assignees."  As discussed above, failure by a servicer to provide

21 information about the holder of a debt is not a violation of RESPA.  There is no indication that

22 these allegations constitute an unfair or deceptive practice.  Plaintiffs have provided no briefing

23 on this issue.  Plaintiffs claim on this theory is dismissed with leave to amend.

24    The allegations in part A are related to the denial of a permanent modification.  As

25 discussed above, borrowers do not have a right to a modification under HAMP.  Further, there is

26 no private cause of action under HAMP. See Hoffman v. Bank of Am., 2010 U.S. Dist. LEXIS

27 70455, *6 (N.D. Cal. June 30, 2010); Simon v. Bank of Am., 2010 U.S. Dist. LEXIS 63480,

28 *26-27 (D. Nev. June 23, 2010); Marks v. Bank of Am., 2010 U.S. Dist. LEXIS 61489, *13 (D.

1    Ariz. June 22, 2010); De La Salle v. America's Wholesale Lender, 2010 U.S. Dist. LEXIS

2    36319, *3-4 (E.D. Cal. Apr. 13, 2010);  Aleem v. Bank of Am., 2010 U.S. Dist. LEXIS 11944,

3    *12 (C.D. Cal. Feb. 9, 2010).  "A court may not allow plaintiff to plead around an absolute bar to

4    relief simply by recasting the cause of action as one for unfair competition." Chabner v. United

5    of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Plaintiffs' claim under this theory

6    is dismissed with leave to amend.

7

8    **E. RSC**

9         There is no indication in the record that Defendant RSC was ever served in this case.  The

10   case was initially removed to this court by Deutsche and Saxon.  In removing the case, these

11   Defendants noted that they "have not been provided with proof of service for any other named

12   defendant." Doc. 1, Notice of Removal, 2:2-3.  The court notes that Plaintiffs subsequently

13   requested and were issued a summons for Argent. Docs. 19 and 21.  No summons for RSC was

14   requested or issued.  At this point, Plaintiffs appear to be in violation of Fed. Rule Civ. Proc. 4.

15

16                                    **IV. Order**

17        Defendants motions to dismiss are GRANTED in part and DENIED in part.  Plaintiffs

18   have stated a claim in the first, second, and fifth causes of action on the theory that the

19   substitution of trustee was ineffective.  All other theories for these causes of action are dismissed

20   without prejudice.  Plaintiffs' third and fourth causes of action are dismissed without prejudice.

21   No party sought dismissal of Plaintiffs' sixth cause of action.  Plaintiffs' seventh cause of action

22   is dismissed without prejudice.  Plaintiffs have stated a claim in the eighth cause of action,

23   borrowing from the wrongful foreclosure claim.  All other theories for this cause of action are

24   dismissed without prejudice.

25        Plaintiffs may file an amended complaint within twenty one (21) days of the filing of this

26   order.  By that deadline, Plaintiffs must also file proof that Defendant Regional Service

27   Corporation has been served.  If no such proof has been provided, RSC will be dismissed from

28   the case without prejudice in accordance with Fed. Rule Civ. Proc. 4(m).  If no amended

complaint is filed, Defendants must file an answer within forty two (42) days of the filing of this order.  Plaintiffs are warned that this is the second time the court has granted leave to amend dismissed claims.  A continued failure to make allegations sufficient to state a claim will likely lead the court to conclude that amendment would be futile, leading to dismissal with prejudice of claims.  Plaintiffs are not granted leave to add additional causes of action to a new complaint.

IT IS SO ORDERED.

Dated:    September 20, 2012     

_____
CHIEF UNITED STATES DISTRICT JUDGE